

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  Case No. 13-Cr-112 (LA)

MONIQUE WHITE,

    Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Bridget J. Domaszek, Assistant United States Attorney, and the defendant, Monique White, individually and by attorney Daniel Meylink, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a four-count indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846.

3.     The defendant has read and fully understands the charge contained in the indictment. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.     The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT FOUR
## THE GRAND JURY FURTHER CHARGES THAT:
On or about July 26, 2012, in the State and Eastern District of Wisconsin,
## MONIQUE WHITE

knowingly and intentionally attempted to possess with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846.

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: twenty (20) years and $1 million. This count also carries a mandatory special assessment of $100, at least three years of supervised release, and a maximum of lifetime term of supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

2

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge of attempted possession with intent to distribute heroin as set forth in count four, the government must prove each of the following propositions beyond a reasonable doubt:

   (1) that the defendant knowingly or intentionally possessed a controlled substance; and
   (2) that the defendant possessed the controlled substance with intent to distribute it to another person.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea,

Case 2:13-cr-00112-LA   Filed 09/05/13   Page 3 of 15   Document 20

the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

15. The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 700 grams of a mixture and substance containing heroin, a Schedule I controlled substance.

4

### Base Offense Level

16. The parties understand, agree, and acknowledge that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in count one is 28 under Sentencing Guidelines Manual § 2D1.1(c)(5), based on 700 grams of heroin. The defendant will not join this recommendation.

### Safety Valve

17. The government agrees that if the defendant otherwise qualifies for the limitation on applicability of statutory minimum sentences under 18 U.S.C. § 3553(f), the government will not object to its application and will recommend a sentence consistent with Sentencing Guidelines Manual § 5C1.2.

### Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but

not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The parties acknowledge, understand, and agree that the government will recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any

6

Case 2:13-cr-00112-LA    Filed 09/05/13    Page 6 of 15    Document 20

and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

## Fine

26. The parties agree to recommend that no fine be imposed.

## Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Forfeiture

28. The defendant agrees that all properties listed in the indictment constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties agree that the forfeiture of the defendant's properties as described in the indictment will be determined by the court prior to or at the time of sentencing.

## DEFENDANT'S COOPERATION

7

28. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other dis-qualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until

8

such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

32. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

33. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations or venue.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all

11

charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

39. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9-5-13

MONIQUE WHITE
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9-5-13

DANIEL MEYLINK
Attorney for Monique White

For the United States of America:

Date: 9/5/13

JAMES L. SANTELLE
United States Attorney

Date: 9/5/2013

BRIDGET J. DOMASZEK
Assistant United States Attorney

## ATTACHMENT A

### Background:

This investigation consists of controlled buys, surveillance, historical debriefs, and physical seizures. The investigation of this drug trafficking organization (DTO) began in the spring of 2012. In March 2012, a confidential source began making controlled buys of heroin from Nicholas Herburger at Herburger's business, H&H Wholesale Tools, 16XX Lincoln Ave., Waukesha, WI. Case agents conducted controlled buys of heroin from Herburger on May 1 (2g for $280), May 3 (same), and May 17, 2012 (same). On June 21, 2012, City of Waukesha Police Department responded to an overdose call at D.S.'s house at 12XX Sunset Drive, Waukesha, WI. Recovered from the scene was 1.5 grams of heroin and baggies of user amounts of marijuana. Upon arrival at Waukesha Memorial, D.S. was pulseless and not breathing. A blood draw taken from D.S. by the nurses reflects that he had high amounts of morphine (500microgarms per liter) at the time he was admitted, which is consistent with a heroin overdose. In April 2013, D.S. was interviewed and admitted that the heroin he obtained on June 21, 2012, was from Herburger. Additionally, text messages obtained from Herburger's phone, (262) 378-01XX, reflect that he was in contact with D.S. on June 17, 2012. For example, Herburger asked Sanneman, "what you need?" D.S. responded, "same." Herburger said, "Ok," and then, "in my mailbox #22, im going to the bar."

### July 10, 2012, search warrant:

On July 10, 2012, DCI and Waukesha MEG agents executed state search warrants at Herburger's business and the residence he shares with his wife at 28XX Fox Lake Circle #22, Waukesha, WI. Recovered from Nicholas Herburger's bedroom was 68.1 grams of heroin. In the basement, case agents recovered two firearms, a Benelli 12 gauge shotgun bearing serial number M344380, and a Winchester model 140 12 gauge shotgun bearing serial number N964022. Simultaneously, a traffic stop was conducted of Herburger's vehicle, a 2006 Mercedes AMG, during which another 45.6 grams of heroin was recovered. After being advised of his rights, Herburger admitted to using and selling heroin from his vehicle and from his business. Herburger said that he uses between ½ gram and 1 gram of heroin per day. He identified a couple Milwaukee sources of supply of heroin, including his most recent source, Monique White. Herburger said that "every Friday," he gave White $10,000 for 100 grams of heroin, which he knew White obtained from Chicago. Herburger said that White's source is named "Ty (later identified as Tyrone Birmingham)," whom Herburger met at Gurnee Mills in the past and who was expected to deliver 120 grams of heroin in Milwaukee that Friday. Herburger agreed to cooperate with law enforcement.

As to D.S., Herburger admitted that initially he worked with D.S. to obtain heroin. D.S. worked for Herburger at Wholesale Tools for 3 years, and the two co-own a bar. Once Herburger began to use White as a source of supply, however, D.S. started obtaining heroin from Herburger. Herburger knew that D.S. was in a coma for approximately 14 days as a result of heroin overdose. Herburger admitted supplying D.S. with heroin on June 17, 2012, mere days before the overdose. "#22" in the text message refers to Herburger's mailbox at 28XX Fox Lake Circle #22.

**July 26, 2012, controlled purchase of heroin from White:**

On July 26, 2012, Herburger and White met at 6th and Highland Streets in Milwaukee to arrange the purchase of 50 grams of heroin. Herburger wore a body wire and he and White are heard discussing Herburger's request for 50 grams of heroin. When Herburger said he wanted 50 instead of the usual 100, White say, "Oh, wow." Herburger then provided White with $5,500 in law enforcement funds. When White said that she had to go to meet her cousin to get the heroin, case agents arrested her. White agreed to cooperate and identified Tyrone Birmingham and his brother as her heroin sources of supply. White stated that Tyrone resides in Chicago, Illinois, and that she "middle manned" heroin transactions between Herburger and Tyrone and his brother. White began purchasing heroin from Tyrone and his brother in December of 2011 or January of 2012. White stated that she would purchase heroin from Tyrone and his brother approximately once per week, and that the transactions would occur both in Illinois and Wisconsin. Numerous transactions occurred at Hau-T Clothing, a clothing store in Chicago that Tyrone either works at or own.

**September 2012 and January 2013 controlled purchases of heroin from Birmingham:**

On September 6, 2012, White made a controlled buy of 50 grams of heroin from Tyrone Birmingham at a restaurant in Gurnee, Illinois. On January 16, 2013, White made a controlled buy of 100 grams of heroin from Birmingham at a gas stated in Milwaukee. That same day, Birmingham was arrested.[1]

In January 2013, pursuant to a standard proffer letter, Tyrone Birmingham debriefed and admitted to distributing heroin to Monique White beginning in 2012. Typically, the transactions occurred at Hau-T Clothing, a retail store in Chicago. White picked up 50 to 100 grams of heroin per week, but said that her customer (Herburger) could handle 200 to 300 grams per week. Birmingham recalled two specific transactions with White at Hau-T, during which he was paid $8,500 for 100 grams of heroin. Birmingham also admitted to meeting Herburger when he was with White during a heroin transaction in Gurnee Mills, IL.

Conservatively estimated, Herberburger and White are responsible for the distribution of at least 700 grams of heroin.

---

[1] Tyrone Birmingham was subsequently indicted in *United States v. Birmingham*, Case No. 13-Cr- 27 (E.D. Wis.). Birmingham entered a guilty plea and is awaiting sentencing.